IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                   **Case No.: 1:21-CR-247-TFH**

BRADLEY WAYNE WEEKS,

        Defendants.

---

## MOTION TO DISMISS COUNT ONE OF THE INDICTMENT

Defendant, Bradley Wayne Weeks, by and through undersigned counsel, and pursuant to Fed.R.Crim.P. 12(b)(3)(B), hereby moves this Honorable Court for its Order dismissing Count One of the Indictment. In support thereof, Defendant states:

1.      On or about March 24, 2021, the Grand Jury returned an Indictment against Defendant Weeks, charging Defendant Weeks in Count One with Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18, U.S.C., §§1512(c)(2) and (2).[1]

2.      Specifically, Count One alleges:

> On or about January 6, 2021, within the District of Columbia and elsewhere, Bradley Wayne Weeks attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority committing an act of civil disorder, and engaging in disorderly and disruptive conduct.

---

[1] The remainder of the Indictment charges Mr. Weeks, along with Co-Defendant, Jonathan Daniel Carlton with: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. §1752(a)(1). (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. §1752 (a)(2) (Count Three); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. §5104 (e)(2)(D) (Count Four); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104 (e)(2)(G) (Count Five). Mr. Carlton has entered a plea of guilty to Count Five and his sentencing is set before this Court on June 29, 2022.

3.       For the reasons set forth in the incorporated Memorandum of Law, the Indictment fails to state an offense, as it: fails to allege the proceeding before Congress Defendant is alleged to have obstructed, influenced or impeded; fails to allege Defendant took some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding; and assuming the proceeding before Congress referenced in the Indictment was the certification of the Electoral College vote count for the 2020 Presidential Election, such proceeding is not an "official proceeding" under 18 U.S.C. §1515(a)(1)(B).

WHEREFORE, Defendant Weeks respectfully requests this Honorable Court enter its Order dismissing Count One of the Indictment in this cause.

## MEMORANDUM OF LAW

### I.       Legal Standard

A Defendant may move to dismiss an Indictment on the grounds that it fails to state an offense. *See* Fed.R.Crim.P. 12(b)(3)(B)(v). In ruling upon a motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F.2d. 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962). However, the Court cannot consider facts beyond the four corners of the indictment. *United States v. Ring*, 628 F.2d. 195, 204 (D.D.C. 2009) (internal quotation omitted); *United States v. Sargent*, 2022 WL 1124817 at *2 (stating court is limited to reviewing the *face* of the indictment).

A factually sufficient indictment is intended to protect certain core constitutional rights, the first of which is Notice. The Sixth Amendment to the Constitution of the United States provides: "[i]n all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of the accusation…." U.S. Const. amend. VI; *see also* Fed.R.Crim.P. 7(c)(1) (requiring a criminal indictment "be a plain, concise, and definite written statement of the

essential facts constituting the offense charged"). Thus, an "indictment's main purpose is to inform the defendant of the nature of the accusation against him." *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) (internal quotation marks and citation omitted).

A factually sufficient indictment also ensures rights guaranteed by the Fifth Amendment, *to wit:* to ensure a criminal defendant is only prosecuted for offenses that a grand jury has actually passed upon and that a defendant convicted of such charge cannot be prosecuted again for that same offense. *See Stirone v. United States*, 361 U.S. 212, 218 (1960) (explaining that the Grand Jury Clause of the Fifth Amendment "limit[s] [a defendant's] jeopardy to offenses charged by a group of his fellow citizens acting independently); *Puerto Rice v. Sanchez Valle*, 579 U.S. 59, 62 (2016) ("The Double Jeopardy Clause of the Fifth Amendment prohibits more than one prosecution for the 'same offence.'"); *United States v. Hillie*, 727 F.Supp.3d 57, 70 (D.D.C. 2017).

**II.   Count One of the Indictment is Insufficient as it Fails to Allege What Proceeding Before Congress was Obstructed, Influenced, and Impeded**

Count One of the Indictment in this cause charges Mr. Weeks with obstruction of an "official proceeding," in violation of 18 U.S.C. §1512(c)(2) and identifies the "official proceeding" as "a proceeding before Congress," as defined in 18 U.S.C. §1515 (A)(1)(B). The conduct alleged to have corruptly obstructed, influenced, and impeded such proceeding is Mr. Weeks entering and remaining in the United States Capitol without authority, committing an act of civil disorder and engaging in disorderly and disruptive conduct. The allegations set forth in Count One fail to state an offense.

"[A]n Indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v.*

*United States*, 418 U.S. 87, 117 (1974). While it is generally sufficient for an indictment to charge an offense by tracking the language of the statute, *id.*, where, however, "guilt depends so crucially upon such a specific identification of fact … an indictment must do more than simply repeat the language of a criminal statute." *Russell v. United States*, 369 U.S. 749, 764 (1962); *see also United States v. Carll*, 105 U.S. 611, 612 (1881) ("finding "it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any certainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished"). Thus, [t]he operative question "is whether the allegation [in the indictment], if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Bowdin*, 770 F.Supp. 2d 142, 146 (D.D.C. 2011).

The Indictment's failure to allege the proceeding before Congress that Defendant is to have obstructed, influenced, and impeded renders it defective on its face. In *Russell*, 369 U.S. at 750, a number of defendants were convicted "for refusing to answer certain questions when summoned before a congressional subcommittee," in violation of 2 U.S.C. §192. The indictments generally alleged that a particular defendant "appeared as a witness before [the] subcommittee [of the Committee on Un-American Activities of the House of Representatives], at the place and on the date above stated, and was asked questions which were pertinent to the question then under inquiry. Then and there the defendant unlawfully refused to answer those pertinent questions." *Id.* at 1041 n 4. "In each case the indictment returned by the grand jury failed to identify the subject under congressional subcommittee inquiry at the time the witness was interrogated." *Id.* at 752. The defendants moved to dismiss the indictments for failure to state the subject matter under investigation at the time of the defendants' interrogation and refusal to answer questions and the motions were denied. *Id.* at 753.

4

The Court found that the indictments at issue failed to sufficiently apprise the defendant's of what they must be prepared to meet. *Id.* at 764. The Court found: "the very core of criminality under [2 U.S.C. §192] is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject actually was, therefore, is central to every prosecution under the statute." *Id.* The Court further found that the "cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined." *Id.* at 766. As a result, the Court reversed the convictions, holding that an indictment under 2 U.S.C. §192 must state the congressional committee inquiry as found by the grady jury. *Id.* at 771. *See also Hillie*, 227 F.Supp.3d at 71 (holding indictment in child pornography case failed to contain sufficient facts describing defendant's conduct to provide him with adequate notice of the charges he must defend, satisfy defendant's Fifth Amendment's right to be tried only upon charges found by a grand jury and enable him to assert double jeopardy in the face of a successive of prosecution).

Count One of the Indictment charging Mr. Weeks suffers from the same infirmities as the indictments in *Russell*. As discussed *infra*, not every function of Congress is an "official proceeding." Without setting forth what specific proceeding is alleged to have been obstructed, influenced, and impeded, there are insufficient factual allegations to apprise Defendant whether the Congressional activity at issue is an "official proceeding," or even what proceeding was taking place.[2] The failure of Count One to set forth what "proceeding before Congress" was taking place that Defendant is alleged to have obstructed, influenced and impeded renders Count

---

[2] This is not to say that it is a complete mystery to Defendant as to what proceeding was taking place in Congress on January 6, 2021. However, a defendant's general knowledge of events taking place does not absolve the Government from its obligation to set forth "essential facts constituting the offense charged." Fed.R.Cim.P. 7(c)(1).

One insufficient as Defendant is not sufficiently apprised of what he must be prepared to meet. Like *Russell*, the absence of allegations setting forth the "proceeding before Congress" which was taking place so as to bring it within the ambit of an "official proceeding" results in a "cryptic form of indictment … with the chief issue undefined." *Russell*, 369 U.S. at 766. As a result, Count One is insufficient on its face and should be dismissed.

**III.    Weeks' Alleged Conduct Does Not Fit Within the Scope of §1512(c)(2)**

As recently held Judge Nichols in *United States v. Garrett Miller*, Case No.: 1:21-CR-00119 (CJN); 2022 WL 823070 at *15 (D.D.C. March 7, 2022) "§1512(c)(2) must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." Memorandum Opinion (Doc. 72) ("Miller Opinion") at 28.[3] The Indictment fails to allege that Mr. Weeks took any such action and, therefore, fails to state an offense.

**A.    Courts Must Exercise Restraint in Assessing the Scope of a Criminal Statute**

Challenges to the scope of a criminal statute traditionally require a court to exercise restraint in assessing the reach of the statute. *See United States v. Aguilar*, 515 U.S. 593, 600 (1995). This is so "both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *Id.* (citations omitted); *see also Marinello v. United States*, 138 S.Ct. 1101, 1108 (2018); *Arthur Anderson, LLP v. United States*,

---

[3] Judge Nichols granted a motion to dismiss on this same basis in *United States v. Joseph Fischer*, Case No.: 1:21-CR-00234(CJN) (Doc. 64). The Government has filed a Notice of Appeal in both cases. Every other court in the District to have ruled on a motion to dismiss the §1512(c)(2) count has denied the motion.

544 U.S. 696, 703 (2005). Concomitantly, the "rule of lenity" applies to resolve ambiguities in a criminal statute in favor of a defendant; however, the rule applies only when ambiguity remains after exhausting the traditional canons of statutory construction. *See Shular v. United States*, 140 S.Ct. 779, 787 (2020).

### B.   <u>The Text of the Statute is Ambiguous as to What Conduct is Prohibited</u>

The starting point in statutory construction is to review the text of the statute itself. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *Southern California Edison Co. v. F.E.R.C.*, 195 F.3d 17, 23 (D.C. Cir. 1999). However, if the plain language of the statute does not answer the question the Court must resort to employing other tools of statutory construction to determine the statute's meaning. *See American Coal Co. v. Federal Mine Safety and Health Review Com'n*, 796 F.3d 18, 27 (D.C. Cir. 2015) (finding that because term "fire" was susceptible to multiple plausible interpretations, term was ambiguous and required further analysis.)

18 U.S.C. §1512 (c) proscribes:

(c) Whoever corruptly –

> (1) alters, destroys, mutilates or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so,

Shall be fined under this title or imprisoned not more than 20 years, or both.

(emphasis added). Mr. Weeks is only charged in Count One with a violation of subsection (2). As the *Miller* opinion observed, "[r]eading §1512(c)(2) alone is linguistically awkward" as it makes criminal "whoever corruptly … otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so." Miller Opinion at 11. Thus, the meaning of "otherwise" is

critical in determining what §1512(c)(2) covers. *Id.* Judge Nichols rejected the government's suggestion that "otherwise" served as "clean break" between subsections (c)(1) and (c)(2), as to interpret the statute in such a manner fails to give meaning to the word "otherwise," and would render use of the term "pure surplusage." *Id.* at 12.

The court also found that reading "otherwise" as totally untethered from subsection (c)(1) is inconsistent with *Begay v. United States*, 553 U.S. 137 (2008). In *Begay*, the Supreme Court held that driving under the influence of alcohol is not a "violent felony" under the Armed Career Criminal Act (ACCA). *Id.* at 148. In so doing, the Court had the determine the effect of the use of the word "otherwise" in the statute.[4] *Id.* at 144. The Court concluded the text of the statute limited crimes that *"otherwise"* involves conduct that presents a serious potential risk of physical injury to crimes that are similar to the specifically enumerated crimes that preceded the clause. *Id.* at 143.

The Miller Opinion adopted the interpretation of the use of "otherwise" in *Begay* and rejected other courts' interpretation of §1512(c)(2) that the word marked as "clean-break" between the language that preceded it with the language that followed. Miller Opinion at 14-15. In so doing, Judge Nichols rejected the government's suggested interpretation of the statute "that subsection (c)(1) contains specific examples of conduct that is unlawful under subsection (c)(2)" and the "link between the subsections is that the unlawful conduct must relate to an 'official proceeding.'" *Id.* at 15 (citing *United States v. Montgomery*, 2021 WL 6134591 at *12 (D.D.C.

---

[4] The ACCA provision at issue defined "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:
    (i) has an element, the use, the attempted use, or threated use of physical force against the person of another; or
    (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise* involved conduct that presents a serious potential risk of physical injury to another.
18 U.S.C. §924(e)(2)(B) (2000 ed.) (emphasis added).

2021)). The court found such interpretation renders the use of "otherwise" superfluous, as both

subsection (c)(1) and (c)(2) use the term "official proceeding." *Id.* at 15-16.

C.      **The Structure of §1512 Supports a Narrow Reading of the Conduct Prohibited**

The Miller Opinion also examined the structure of the statute in determining that

subsection (c)(2) was limited in scope by the conduct set forth (c)(1).[5] *Id.* at 20. The Miller

Opinion observed that other subsections of §1512 criminalize "fairly discrete conduct in narrow

contexts." *Id.* Apart from subsection (c)(2), §1512 criminalizes actions taken against witnesses

and tangible evidence. *See* §1512(a)(1) ("Whoever kills ... another person with the intent to –

(A) prevent attendance or testimony ... (B) prevent the production of a record, document, or

other object..."); §1512 (a)(2) ("Whoever uses physical force or the threat of physical force

against any person ... with the intent to – (A) influence, delay or prevent the testimony of any

person... (B) cause or induce any person to – (i) withhold testimony, or withhold a record,

document, or other object... (ii) alter, destroy, mutilate, or conceal an object with intent to impair

the integrity or availability of the object ... (iii) evade legal process summoning that person to

appear as a witness, or to produce a record, document, or other object... (iv) be absent from an

official proceeding ... (C) hinder, delay, or prevent communication to a law enforcement officer

or judge ..."); §1512(b) ("Whoever knowingly uses intimidation, threatens, or corruptly

persuades another person ... or engages in misleading conduct toward another person, with the

intent to – (1) influence, delay, or prevent the testimony of any person ... (2) cause or induce any

---

[5] While certainly not dispositive of the issue, the title of §1512 sheds light on what the statute prohibits: "Tampering with a witness, victim, or an informant." While the title of the statute cannot limit the plain meaning of the text, it is of use for interpretative purposes when it sheds light on some ambiguous word or phrase. *See Pennsylvania Dept. of Corrections v. Yeshey*, 524 U.S. 206, 212 (1998).

person to – (A) withhold testimony, or withhold a record, document, or other object… (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use … (C) evade legal process … to appear as a witness, or to produce a record, document or other object … or (D) be absent from an official proceeding to which such person has been summoned … (3) hinder, delay, or prevent communication to a law enforcement officer or judge …"); §1512(c)(1) "Whoever corruptly alters, destroys, mutilates or conceals a record, document, or other object … with the intent to impair the object's integrity or availability …"); §1512(d) ("Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from – (1) attending or testifying … (2) reporting to a law enforcement officer or judge … (3) arresting or seeking the arrest of another person … or (4) causing a criminal prosecution … to be sought or instituted, or assisting in such prosecution… .").

Judge Nichols observed that if the court were to adopt the government's broad reading of the scope of conduct prohibited by subsection (c)(2), "it would introduce something of an internal inconsistency: subsection 1512(c)(2) would be the only provision in §1512 not to have a narrow focus." Miller Opinion at 21. The court also observed that the placement of such a broad provision in an otherwise narrowly tailored criminal statute ("in a subsection of a subsection nestled in the middle of a statute") cuts against the government's interpretation; "Congress does not hide elephants in mouseholes…." *Id.* at 21. The court reiterated that the government's broad interpretation of (c)(2) would render virtually all of the other subsections of §1512 unnecessary and "such substantial overlap within the same section suggests that Congress did not mean §1512(c)(2) to have so broad a scope." *Id.* at 21-22. As a result, Judge Nichols found that (c)(2) operates as a "catchall" to the narrow prohibition Congress created in §1512(c)(1) – not as a duplicate to nearly all of §1512." *Id.* at 22.

**D.      The Legislative History of §1512(c)(2) Supports Narrow Reading of the Statute**

Lastly, the Miller Opinion analyzed the legislative history of the statute, observing that it was intended to fill the gap that was identified after the Enron collapse where the statute was only applicable to conduct influencing another person. *Id.* at 23-27. Subsection (c) was added to §1512 as part of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, §1102, 116 Stat. 745, 807; a law "prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States*, 574 U.S. 528, 535-36 (2015). As part of the Act, Congress closed a loophole that existed in the law whereby a person was subjected to criminal liability for intimidating, threatening, or corruptly persuading *another person* to shred documents, *see* 18 U.S.C §1512(b), but did not criminalize the act's of one who shredded documents himself. To close this loophole, Congress enacted 18 U.S.C. §1519. *Yates*, 547 U.S. at 536.

In proposing this legislation, another gap in the statutory scheme was identified for document destruction that had taken place prior to the issuance of a subpoena calling for the documents' production for a particular proceeding. *See* Miller Opinion at 26-27. Accordingly, a floor amendment to the legislation was offered by Senator Trent Lott introducing §1512(c) as part of the bill. *See Id.* at 26; *United States v. Montgomery*, 2021 WL 6134591 at *15 (D.D.C. 2021). In so doing, Senator Lott stated the purpose of the amendment was to "deter fraud and abuse by corporate executives," and that the new subsection "would enact stronger laws against document shredding. Current law prohibits obstruction of justice by a defendant acting alone, *but only if a proceeding is pending and a subpoena has been issued for the evidence that has been*

11

*destroyed or altered.* Timing is very important." 148 Cong. Rec. S6542, S6545 (daily ed. July 10, 2002) (emphasis added).

Similarly, Senator Orrin Hatch stated the purpose of §1512(c) was to reach conduct of individuals acting alone in the destruction of documents. *See* Miller Opinion at 27. Senator Hatch stated the new subsection "closes this loophole by broadening the scope of Section 1512," and "would permit the government to prosecute an individual who acts alone in destroying evidence, *even where the evidence is destroyed prior to the issuance of a grand jury subpoena.*" 148 Cong. Rec at S6550 (emphasis added). Thus, the legislative history of §1512(c) supports the interpretation that it was enacted to close a loophole that existed whereby it was illegal to cause another to destroy documents, but not to do so oneself. It was not enacting a new all-encompassing obstruction statute unrelated to the destruction of evidence. *See* Miller Opinion at 28. ("Congress closed that loop by passing subsection (c), and nothing in the legislative history suggests a broader purpose than that.")

The court concluded that "§1512(c)(2) must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impeded, or influence an official proceeding." *Id.* Mr. Weeks asserts that the Miller Opinion's interpretation of §1512(c)(2) is the correct one and urges this Court to follow the same. The Indictment fails to allege that Mr. Weeks took any action with respect to a document, record, or other object and, therefore, the Indictment fails to state a violation of 18 U.S.C. §1512(c)(2). Accordingly, Count One of the Indictment should be dismissed.

**IV.**   **An Official Proceeding under 18 U.S.C. §1512(c) Requires an Adjudicative or Investigative Function**

A review of the text, history, and prior decisions interpreting §1512, establishes that the statute applies to only proceedings that perform an adjudicative or investigative function, involving witness testimony and evidence, of which Congress' certification of Electoral College votes does not.

In interpreting whether the Electoral College certification is embraced by the definition of "official proceeding" codified at 18 U.S.C. §1515(a)(1), the text of the statute is of little value. The statutory definition is rather circular as it defines "official proceeding" as a "proceeding before Congress." 18 U.S.C. §1515(a)(1)(B). A "proceeding" has been generally defined as: a "legal action," "procedure," "events, happenings," "transaction," or "an official record of things said or done." *Merriam-Webster's Collegiate Dictionary* 990 (11th ed: 2003). "Proceeding" has been defined legally as: "1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing." Black's Law Dictionary 1221 (7th ed: 1999).

While Congress' certification of the Electoral College votes certainly could be interpreted to include "an official record of things said or done," or "the business conducted by a court or other official body," the other definitions for the term "proceeding" do not contemplate Congress' certification of votes ("legal action," "the regular and orderly progression of a lawsuit," "any procedural means for seeking redress from a tribunal or agency"). Furthermore, when a term has both a general and a more technical meaning, courts look to the surrounding words and phrases to decide which of the two meanings are being used. *See United States v.*

13

*Ermoian*, 752 F.3d 1165, 1170 (9th Cir. 2013). In *Ermoian*, the Ninth Circuit had occasion to

interpret what constitutes an "official proceeding," albeit in the context of whether a criminal

investigation was one. In reviewing §1512, the *Ermoian* court explained that "[s]everal aspects

of the definition for 'official proceeding' suggest the legal – rather than the lay – understanding

of the term 'proceeding' is implicated in the statute, referring to the descriptor "official," as well

as words surrounding the term that contemplate a legal usage. *Id.* at 1170.

The *Ermoian* court then examined the broader statutory context in which the term was

used. The court found the use of the preposition "before" the term suggested "an appearance

before the agency sitting as a tribunal," quoting *United States v. Ramos*, 537 F.3d. 439, 462-63

(5th Cir. 2008) for the proposition that 'official proceeding' involves some formal convocation

of the agency in which parties are directed to appear…." *Id.* at 1171. The court also believed the

terms employed in the statute, "attendance," "testimony," "production," and "summon [],"

strongly implied "that some formal hearing before a tribunal is contemplated." *Id.* at 1172. The

court concluded that based upon the "plain meaning of the term 'proceeding,' its use in the

grammatical context of the 'official proceeding' definition, and the broader statutory context," a

criminal investigation was not an "official proceeding." *Id.*

Similarly, Congress' certification of the Electoral College votes does not qualify as an

official proceeding. While the certification is certainly a "formal convocation" as Congress is

directed to appear by both the Constitution, *see* U.S. Const. amend XII, and statute, *see* 3 U.S.C.

§15, it lacks the hallmarks of an adjudicative or investigatory hearing. No subpoenas are issued;

no witnesses are called; no testimony is taken; and no evidence is introduced. As set forth *supra*

at pp. 8-11, the broader statutory context and legislative history of §1512 establish that the

statute is designed to prevent the tampering with witnesses and evidence. Congress' certification

of the Electoral College votes, has no witnesses or presentation of evidence with which to tamper. *See* 3 U.S.C. §§15-18. In short, absent an adjudicatory or investigatory function being performed by one of the bodies listed in 18 U.S.C. §1515(a)(1)(A), there can be no official proceeding. Indeed, the Department of Justice's own interpretation of §1512 is consistent with such interpretation DOJ's Criminal Resource Manual discussing the application of §1512 provides:

> Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. *It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers.*

Criminal Resource Manual, CRM 1729, Department of Justice (emphasis added). [6]

## IV.      Conclusion

For all the foregoing reasons, Count One of the Indictment fails to state an offense and should be dismissed. First, Count One fails to set forth what proceeding was taking place before Congress on January 6, 2021. Without identifying what proceeding was taking place, it is impossible to determine whether such proceeding was an "official proceeding" under §1512(c)(2). Second, in its zeal to prosecute persons participating in the events of January 6, 2021, and charge them with a violation of every conceivable statute, the Government is attempting to stretch 18 U.S.C. §1512(c)(2) beyond its intended scope to reach conduct that does not involve taking action with respect to a document, record or other object in order to corruptly obstruct, impeded or influence an official proceeding. Lastly, the certification of the Electoral College votes is not an "official proceeding" under §1512(c)(2), as certification did not involve

---

[6] Found at:
https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or

and adjudicatory or investigatory function. While certainly a formal proceeding, certification lacked the attributes of a hearing that the statute was designed to reach, i.e. the calling of witnesses and the presentation of evidence. Absent these features which the statute is designed to protect, there is no "official proceeding." The certification of the Electoral College votes does not entail the calling of witnesses or presentation of evidence and thus, is not an official proceeding for purposes of §1512(c)(2). Accordingly, Count One of the Indictment should be dismissed.

Respectfully submitted,

_Matthew R. Kachergus_

Elizabeth L. White, Esquire
Florida Bar No.:  314560
Matthew R. Kachergus, Esquire
Florida Bar No.:  503282
Bryan E. DeMaggio, Esquire
Florida Bar No.:  055712
Jesse B. Wilkison, Esquire
Florida Bar No.:  118505
Camille E. Sheppard, Esquire
Florida Bar No.: 124518
Sheppard, White, Kachergus, DeMaggio &
Wilkison, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone: (904) 356-9661
Facsimile: (904) 356-9667
Email: sheplaw@sheppardwhite.com
COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 27, 2022, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to

the following:

> **Jamie Carter, Assistant U.S. Attorney**
> **Anne Veldhuis, Assistant U.S. Attorney**
> **U.S. Attorney's Office for the District of Columbia**
> **555 Fourth Street, NW**
> **Washington, DC 20530**

_Matthew R. Kachergus_
**ATTORNEY**

MRK/jj[weeks,bradley-motion.to.dismiss.count.one.of.the.indictment]